Tong v. Dunn, 2012 NCBC 16.

STATE OF NORTH CAROLINA

COUNTY OF ORANGE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 1522

SIU S. TONG, et al,

   Plaintiffs,

  v.

DAVID DUNN, TIMOTHY
KRONGARD, ED MASI, SOPHIA
WONG, JANET WYLIE, ENG
ACQUISITION, INC., both
individually and as successor-in-
interest to ENGINEOUS SOFTWARE,
INC.,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON
CORPORATE DEFENDANTS'
MOTION TO DISMISS**

 {1} THIS MATTER is before the court on Defendants ENG Acquisition, Inc. and Engineous Software, Inc.'s Motion to Dismiss ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule" or "Rules"). For the reasons stated below, the Motion is GRANTED.

> *Robinson & Lawing, LLP by Michael L. Robinson, H. Stephen Robinson, and Kurt Seeber; Arrowood Peters, LLP by Raymond P. Ausrotas; Todd & Weld LLP by David Rich for Plaintiffs.*
>
> *Kilpatrick Townsend & Stockton PLLC by Gregg McDougal and John Moye for Defendants David Dunn, Timothy Krongard, Ed Masi, Sophia Wong, and Janet Wylie.*
>
> *Moore & Van Allen PLLC by Mark A. Nebrig and Renee D. K. Miller for Defendants ENG Acquisition, Inc. and Engineous Software, Inc.*

Gale, Judge.

## I. INTRODUCTION

{2} Plaintiffs, former holders of common stock, filed this action for monetary relief against five individual Defendants and two corporate Defendants. The individual Defendants are former Engineous Software, Inc. ("Engineous") directors, one of which was also an officer,[1] who are accused of limiting the flow of information to common shareholders and to Plaintiff Director Siu S. Tong ("Tong") representing their interest, regarding a merger transaction that impermissibly enriches the preferred shareholder Defendants. Plaintiffs assert claims for breach of fiduciary duty against the individual Defendants. They assert a claim against the corporate Defendants for aiding and abetting the breach of those fiduciary duties by the individual Defendants.

{3} The Motion attacks Plaintiffs' claims against the corporate Defendants asserting, *inter alia*, that: (1) the Complaint fails to assert a cognizable claim for aiding and abetting a fiduciary duty even if North Carolina continues to recognize such a cause of action, particularly where the claim depends on a breach of duties by fellow fiduciaries, and the corporate Defendants, who are asserted to have aided its own officers or directors, cannot be characterized as a third-party having no fiduciary duty; or, alternatively (2) Plaintiffs' conclusory allegations do not describe how or when the corporate Defendants aided and abetted any breach of fiduciary duty.

{4} The Motion is GRANTED, leaving Plaintiffs' recovery, if any, to be from the individual Defendants based on their own breaches of fiduciary duties.

---

[1] On this issue, the Complaint is subject to interpretation. Paragraph 82 suggests that Defendant Timothy Krongard may have been both an Engineous director and officer. During briefing and oral argument, however, Plaintiffs emphasized that the aiding and abetting claim is predicated on the pre-merger conduct of a single Engineous officer, Defendant Janet Wylie. If, in fact, Timothy Krongard was an Engineous officer, it would not change the court's ruling on the Motion.

## II.  PROCEDURAL HISTORY

{5}  Plaintiffs' Complaint was filed in Orange County Superior Court on July 20, 2011.  The matter was designated as a Complex Business Case by Chief Justice Sarah Parker on August 29, 2011 and then assigned to the undersigned on September 2, 2011.  The individual Defendants filed their Answer on September 19, 2011 and their Amended Answer on October 24, 2011.  The corporate Defendants filed their Motion on September 23, 2011.  The Motion has been fully briefed, the court heard oral arguments, and the Motion is ripe for disposition.[2]

## III.  STATEMENT OF FACTS

{6}  The court does not make findings of fact in connection with the Motion as a motion to dismiss does "not present the merits, but only [determines] whether the merits can be reached."  *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  The following facts are stated to provide context for the court's opinion and are taken from the pleadings and are construed favorably to the Plaintiffs, with the court drawing permissible inferences not inconsistent with the facts alleged.

{7}  Plaintiff Tong is a citizen and resident of Wake County, North Carolina and an Engineous founder and former director nominated to represent the interests of its common shareholders.  Plaintiff David J. Powell ("Powell") is a citizen and resident of Orange County, North Carolina and an Engineous founder and former director.  The remaining Plaintiffs include all holders of Engineous common stock other than the individual Defendants.  Tong, Powell, and the remaining Plaintiffs will be referred to collectively as the "Plaintiffs" or the "Common Shareholders."

{8}  Defendant David Dunn ("Dunn") is a former Engineous director and a citizen and resident of North Carolina.  Defendant Timothy Krongard ("Krongard") is a former Engineous director and a citizen and resident of Maryland.  Defendant Ed Masi ("Masi") is a former Engineous director and a citizen and resident of

---

[2] The individual Defendants have separately moved to dismiss claims brought by Plaintiff Tong. That motion will later be addressed by a separate order.

Arizona. Defendant Sophia Wong ("Wong") is a former Engineous director and a citizen and resident of Connecticut. Defendant Janet Wylie ("Wylie") is both a former Engineous director and officer and is a citizen and resident of Florida. Defendants Dunn, Krongard, Masi, Wong, and Wylie are referred to collectively as the "Individual Defendants."

{9} Defendant ENG Acquisition, Inc. ("ENG") is a corporation organized and existing under the laws of the State of Delaware and is the successor-in-interest to Engineous as a result of a merger transaction. ENG is a wholly owned subsidiary of non-party Dassault Systemes S.A. ("Dassault"), a publicly traded company headquartered in France. Defendant Engineous is a corporation organized under the laws of the State of Delaware with a principal place of business in Wake County, North Carolina. ENG and Engineous are referred to collectively as the "Corporate Defendants."

{10} In early Spring 2006, the Engineous Board of Directors ("Board") voted to explore opportunities to sell the company and retained the investment banking division of Wachovia Bank ("Wachovia") to facilitate the transaction. (Compl. ¶¶ 57, 59.) Wachovia stated that it would bring non-traditional buyers to compete for Engineous' assets and orally projected a sales price between $100-120 million. (Compl. ¶ 59.)

{11} Krongard expressed a belief that a sales price below $60 million was not in the best interest of Engineous or its shareholders, (Compl. ¶ 58), and sought to work with Tong to block any sale if the valuation was too low. (Compl. ¶ 60.) As a founder and common shareholder, Tong agreed to work with Krongard and Wachovia in an attempt to represent the interests of all Engineous shareholders. (Compl. ¶ 61.)

{12} Wachovia was unable to generate the promised competition. Tong then located Dassault and three (3) other potential buyers, and Dassault and Siemens participated in the bidding process. (Compl. ¶¶ 62, 63.) Engineous' Board held a special meeting in Fall 2007 to effectively cut off Tong's interaction with potential buyers. (Compl. ¶ 64.) Other Board meetings were held in Fall 2007 during which

the rights of preferred and common shareholders were discussed. Plaintiffs contend that during these meetings, the Individual Defendants collectively agreed to negotiate a merger that would adequately compensate preferred shareholders at the expense of the Common Shareholders.

{13} Plaintiffs aver that the minutes of Board meetings were drafted to conceal evidence suggesting that certain Board members placed their own interests ahead of the Common Shareholders, but instead only reflected that Wylie was being appointed to lead any merger and acquisition discussions. (Compl. ¶ 66.) Plaintiffs believe that Wylie received a "carve-out" and possibly severance payments as consideration for her decision to support a merger that would only benefit preferred shareholders. (Compl. ¶ 67.)

{14} Tong refused to sign off on the minutes for one Board meeting, citing the omission of several statements made and the failure to acknowledge the apparent agreement between the directors representing preferred shareholders that their interests should and would drive the negotiations forward. (Compl. ¶ 68.) Thereafter, the Board and executive management attempted to block communications between Tong and potential buyers in order to limit the flow of information to the Common Shareholders. (Compl. ¶ 69.)

{15} At that time, Tong requested that the Board consider the fair treatment of all shareholders. (Compl. ¶ 70.) Tong encouraged the Board to wait a "bit longer," suggesting that the roll-out of a new product, FIPER, might cause a short-term delay in the sale, but would likely result in substantial benefits to all Engineous shareholders. (Compl. ¶ 71.) The Board refused to wait for the roll-out, citing a potential future cash flow shortage. (Compl. ¶ 72.)

{16} At a Fall 2007 Board meeting, the preferred shareholder directors proposed that a percentage of the proceeds from the merger be carved out to reward "key business employees" for their contributions to the merger. (Compl. ¶ 73.) Plaintiffs believe that this money was actually set aside to reward those employees and executives who supported the merger in favor of the preferred shareholders and to "buy" general releases from certain employees, alleging that Wylie and "other

preferred shareholders holding board seats" misled Engineous employees by insisting that Dassault, rather than Engineous and its preferred shareholder directors, demanded signed releases as a condition to the carve-out.  (Compl. ¶¶ 74–75.)

{17}  Dassault initially offered $35-40 million for Engineous.  Dunn proposed that the Board accept the offer, whereas Tong suggested that the Board wait for a competitive purchase offer from Siemens.  (Compl. ¶ 78.)  Engineous was not able to secure a more favorable offer from Siemens.  (Compl. ¶ 79.)  Tong did not vote in favor of either the Dassault or Siemens letters of intent, believing that neither was in the best interest of all Engineous shareholders.  (Compl. ¶ 76.)

{18}  Plaintiffs allege that throughout the negotiations, officers of the company, including Wylie and Krongard, "interfered with Mr. Tong and his rights, both as a director representing Common Shareholders, and as a common shareholder personally, to interact with participants and gather information about ongoing developments" as "part of a concerted effort to assure the process would proceed in a manner that benefitted only the preferred shareholder Individual Defendants at Mr. Tong's and the other Common Shareholders' expense."  (Compl. ¶ 82.)  Plaintiffs further assert that the "preferred shareholder majority members of Engineous's board, as well as Individual Defendant officers . . . made false representations to induce others to believe that their 'wash-out' scheme was being executed in a manner that was consistent with the fiduciary duties they owed to all shareholders."  (Compl. ¶ 84.)  Specifically, they contend that Wylie:

> provided false information to an Engineous common shareholder, Stanley Young, in which she claimed that the company had previously raised funds that resulted in $100M preference and that the company had only ever been the subject of a prior offer to purchase for $10 Million.  This was knowingly false to hide the fact that the sales price in the currently pending transaction was just below preference, and Common Shareholders could actually have an "upside" in the transaction if it had closed in excess of approximately $45-50M – but for the Individual Defendants' desire to exit and sell the company before the Common Shareholders would receive any financial benefit.  No offer of $10 Million was ever presented to Mr. Tong . . . so Ms.

Wylie's statement was either wholly fabricated, or information was concealed from Mr. Tong.

(Compl. ¶ 85.)

{19} On July 21, 2008, Dassault acquired Engineous for approximately $40 million, by way of its merger into the ENG entity. (Compl. ¶ 83.)

{20} Plaintiffs now assert that: (1) the pre-merger conduct of the Individual Defendants constitute breaches of fiduciary duties owed to Engineous and the Common Shareholders; and (2) Engineous aided and abetted their own directors and officers in breaching those duties.

## IV. STANDARD OF REVIEW

{21} The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008); *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670–71, 355 S.E.2d 838, 840–41 (1987); *see Sutton v. Duke*, 277 N.C. 94, 102–03, 176 S.E.2d 161, 166 (1970).

## V. ANALYSIS

{22} Inquiry begins with examining whether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty under any set of facts, and if so, whether the Complaint alleges facts that satisfy the elements of such a claim.

{23} "It is undisputed that the Supreme Court of North Carolina has never recognized [a cause of action for aiding and abetting breach of fiduciary duty]." *Laws v. Priority Tr. Servs. of N.C., L.L.C.*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009). "The only North Carolina Court of Appeals decision recognizing such a claim, *Blow v. Shaughnessy*, 88 N.C. App. 484, 364 S.E.2d 444 (1988), involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in *Central Bank of Denver v. First Interstate Bank of*

*Denver*, 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994)." *Laws*, 610 F. Supp. 2d at 532.

{24} Without a definitive recent statement from our appellate courts, "[i]t remains an open question whether North Carolina law recognizes" the claim. *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33 ¶ 68 (N.C. Super. Ct. Oct. 19, 2007), http://www.ncbusinesscourt.net/opinions/101907%20Order% 20Webpage.pdf; *compare Laws*, 610 F. Supp. 2d at 532 (granting Rule 12(b)(6) motion to dismiss claim for aiding and abetting breach of fiduciary duty because "no such cause of action exists in North Carolina") *with In re Vendsouth, Inc.*, 2003 Bankr. LEXIS 1437, at *49 (M.D.N.C. Oct. 9, 2003) (stating "North Carolina law recognizes a claim for aiding and abetting breach of fiduciary duty").

{25} While the Parties have differing contentions with respect to whether North Carolina recognizes the cause of action, both concede that, if recognized, the essential elements of aiding and abetting breach of fiduciary duty are articulated by the Court of Appeals in *Blow*. To establish a claim for aiding and abetting breach of fiduciary duty as stated in *Blow*, Plaintiffs must show: (1) violation of a fiduciary duty by the primary party; (2) knowledge of the violation by the aiding and abetting party; and (3) substantial assistance by the aider and abettor in achieving the primary violation. *Blow*, 88 N.C. App. at 489, 364 S.E.2d at 447. Substantial assistance is a "substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff, or a showing that the encouragement or assistance is a substantial factor in causing the resulting breach." *Id.* at 491, 364 S.E.2d at 448 (citations omitted).

{26} Pursuant to Restatement (Second) of Torts § 876 ("Section 876"),[3] a contributing tort-feasor is subject to liability if they "give substantial assistance to the other in accomplishing a tortious result and his own conduct, separately

---

[3] The North Carolina Supreme Court has expressly adopted Section 876 as it applies to the negligence of joint tort-feasors but has not been presented with the question of its applicability to aiding and abetting claims. *See Boykin v. Bennett*, 253 N.C. 725, 118 S.E.2d 12 (1961). The North Carolina Court of Appeals, however, has cited favorably to Section 876 in analyzing other aiding and abetting claims. *See Blow*, 88 N.C. App. 484, 364 S.E.2d 444; *see also McMillan v. Mahoney*, 99 N.C. App. 448, 393 S.E.2d 298 (1990).

considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876 (1979). Consistent with the Restatement approach, but without addressing whether North Carolina recognizes claims for aiding and abetting tortious conduct, this court has previously held that for any aiding and abetting claim a North Carolina court might recognize, it is clear that the primary party and the aiding and abetting party must have the same level of culpability or scienter. *Sompo Japan Ins. Co., v. Deloitte & Touche, LLP*, 2005 NCBC 2 ¶ 12 ( N.C. Super. Ct. June 10, 2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC %202.htm ("[w]hat is clear from all the cases and the Restatement is that there is not a lower level of culpability or scienter for the aiding and abetting than the underlying tort").

{27} To support their claim that the Corporate Defendants aided and abetted in the Individual Defendants' breach of fiduciary duty, Plaintiffs allege only the following conclusory allegations:

> 95. The Individual Defendants owed to Mr. Tong and the Common Shareholders the fiduciary duties that are fully set forth above.
>
> 96. By committing the acts and omissions as set forth, the Individual Defendants breached their fiduciary duties owed to Mr. Tong and the Common Shareholders.
>
> 97. Engineous (and its successor-in-interest ENG) aided and abetted the individual defendants in breaching their fiduciary duties owed to Mr. Tong and the Common Shareholders.
>
> 98. Engineous (and its successor ENG) colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the breaches of fiduciary duties owed to Mr. Tong and the Common Shareholders.

(Compl. ¶¶ 95–98.)

{28} Plaintiffs have attempted to flesh out their allegations in their written submissions and oral argument, where they argued that through the pre-merger conduct of its officer Defendant Wylie which is imputed to the corporation, the Corporate Defendants aided and abetted the breaches of fiduciary duties by its own

officers and directors.  Recognizing the general rule that a corporation cannot be said to conspire with or aid its own directors, Plaintiffs emphasize acts taken by Wylie as an officer.  They assert that "executive management of the Corporate Defendants worked with the board of directors to block Plaintiff Tong . . . from interacting with the potential buyer, Dassault" and "an Officer of the Corporate Defendants actively frustrated . . . Tong's efforts to gather information about ongoing developments."  (Plaintiffs' [Corrected] Opposition to Corporate Defendants' Motion to Dismiss ("Pls.' Opp'n Br.") 7; Compl. ¶¶ 69, 82.)  That is, Wylie, as an officer, assisted the directors in breaching their duties, and since Wylie's acts as an officer are imputed to the corporation, the Corporate Defendants are liable for aiding and abetting.  Plaintiffs argue that: (1) Wylie was a Engineous board member and a corporate officer; (2) in her dual role as director and officer she performed multiple acts in collaboration with the Individual Defendant directors; (3) she accepted a carve-out and severance package benefitting the Individual Defendants personally in exchange for supporting a low-value merger; (4) she misled Engineous Common Shareholder employees by claiming that Dassault wanted releases to be signed (when actually Engineous management and the Board did); and (5) she provided false information to shareholders concerning the value of supposed prior offers.  (Pls.' Opp'n Br. 7.)

{29}  As a general rule, the conduct of a corporate officer, within the scope of employment, cannot expose the corporation itself to aider and abettor liability because of the intra-corporate immunity doctrine, which recognizes that "a corporation cannot successfully conspire with its own officers, employees or agents." *Tate v. Sallie Mae, Inc.*, 2011 WL 3651813, at *3 (W.D.N.C. Aug. 19, 2011).  While the court here premises its holding on North Carolina law, it is aware and has considered that Delaware recognizes a limited exception to the intra-corporate immunity doctrine where an officer or director who has fiduciary duties to the corporation also undertakes acts independent of that duty, such as when having a personal interest separate and distinct from the corporation or where participating on both sides of a merger transaction.  *See* Ronald A. Brown, Jr., *Claims of Aiding*

*and Abetting a Director's Breach of Fiduciary Duty—Does Everybody Who Deals With a Delaware Director Owe Fiduciary Duties to that Director's Shareholders?*, 15 DEL. J. CORP. L. 943 (1990). However, Delaware also adopts the general principle that "a corporation's directors and officers are all part of a single legal entity and, therefore, they cannot conspire with each other because it takes at least two people or entities to carry out a conspiracy." *Id. at* 960–61.

{30} Under Plaintiffs' theory of liability, acts by Wylie are imputed to the corporation and Wylie's conduct gives rise to an aiding and abetting claim because under established North Carolina law, "a corporation can act only through its agents, which includes its corporate officers." *See Woodson v. Rowland*, 329 N.C. 330, 344, 407 S.E.2d 202, 231 (1991). This theory, however, conflicts with the proposition that liability for aiding and abetting a breach of fiduciary duty "applies only to third parties who do not stand in a fiduciary relationship with the alleged victim, but who provide substantial assistance towards accomplishing the alleged breach." *Battleground*, 2007 NCBC 33 ¶ 70.

{31} A different case might be presented if Wylie were alleged to have undertaken acts independent of and outside her acts as an Engineous officer or director. But here, the Complaint rests on the pre-merger acts by Wylie within the scope of her duties as an officer and in a manner that her acts are imputed to the corporation. Such an allegation falls within the intra-corporate immunity doctrine and outside its exception recognized in Delaware. Wylie's actions cannot give rise to aider and abettor liability under these circumstances because Wylie stands in a direct fiduciary relationship with Engineous, the alleged victim.

{32} Even were the court able to construe the Complaint as somehow falling within the parameters of an aiding and abetting claim the North Carolina courts may allow, which it cannot, further scrutiny would be required because of the sparse conclusory allegations upon which the claim is asserted. Specifically: (1) the Complaint is devoid of allegations of substantial assistance by the Corporate Defendants; (2) Plaintiffs' argument relies, at least in part, on facts absent from the Complaint and unsupported by reasonable inferences drawn therefrom; (3) with the

exception of paragraphs 82 and 84, the Complaint fails to distinguish actions taken by Wylie as a director from actions taken as a corporate officer.

{33} There are separate policy issues that ultimately may need to be addressed by the North Carolina appellate courts if an aiding and abetting a breach of fiduciary claim is to be clearly recognized. However, on the facts of this case, the court has not been required to enter those unsettled waters.

## VI. CONCLUSION

{34} For the reasons stated, the Corporate Defendants' Motion is GRANTED and Plaintiffs' claim for aiding and abetting a breach of fiduciary duty is DISMISSED.

IT IS SO ORDERED, this 19th day of March, 2012.