Phillips and Jordan, Inc. v. Bostic, 2012 NCBC 34.

STATE OF NORTH CAROLINA

GRAHAM COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
11 CVS 53

PHILLIPS AND JORDAN, INC.,

Plaintiff,

v.

JOSEPH E. BOSTIC, JR., JEFFERY L.
BOSTIC, MELVIN MORRIS, TYLER
MORRIS, and MICHAEL HARTNETT,

Defendants.

ORDER & OPINION

*McKinney & Tallant, P.A. by Zeyland G. McKinney, Jr. for Plaintiff.*

*Ivey, McClellan, Gatton, & Talcott, LLP by Edwin R. Gatton for Defendants Melvin
Morris and Tyler Morris.*

*Smith Moore Leatherwood, LLP by Jonathan A. Berkelhammer for Defendant
Michael Hartnett.*

*Nexsen Pruet, PLLC by Randall W. Reavis and Christine L. Myatt for Defendants
Joseph E. Bostic, Jr. and Jeffery L. Bostic.*

Murphy, Judge.

{1}     **THIS MATTER** is before the Court on Defendants' (Joseph E. Bostic,
Jr., Jeffery L. Bostic ("Bostic Defendants"), Melvin Morris, Tyler Morris ("Morris
Defendants"), and Michael Hartnett) Motions to Dismiss and the Bostic Defendants
and Morris Defendants' alternative Motions for More Definite Statement.  After
considering the parties' motions and briefs, and the arguments and contentions of
counsel made during a hearing before this Court on September 28, 2012, the Court
**DENIES** in part and **GRANTS** in part Defendants' Motions to Dismiss, and
**DENIES** Defendants' Motions for More Definite Statement.

I.

PROCEDURAL HISTORY

{2}     This action is the second case filed by Plaintiff against the Bostic and
Morris Defendants relating to the same transactions and occurrences.  The first

case (the "Prior Action") (08 CVS 07) was filed in Graham County Superior Court on January 18, 2008. (Bostic Defs.' Br. Supp. Mot. Dismiss 2.) The Prior Action was removed to the North Carolina Business Court but voluntarily dismissed without prejudice on November 1, 2010. (Bostic Defs.' Br. Supp. Mot. Dismiss 2.)

{3} The current action was filed on April 1, 2011, designated a complex business case, and assigned to this Court on May 5, 2011. (Compl. p. 26; Designation Order 1; Assignment Order 1.) Defendant Hartnett was named a Defendant for the first time in the current case; he was not a named party in the Prior Action.

{4} The Bostic Defendants, Morris Defendants, and Defendant Hartnett filed their Motions to Dismiss, Motions for More Definite Statement, and supporting briefs on May 25, 2011. (Bostic Defs.' Mot. Dismiss 2; Bostic Defs.' Mot. More Definite S. 2; Morris Defs.' Mot. Dismiss 2; Morris Defs.' Mot. More Definite S. 2; Def. Hartnett's Mot. Dismiss 2.)

{5} Defendants' Motions were fully briefed on June 28, 2011, and the Court conducted a hearing on the Motions on September 28, 2012. During the hearing, in open Court, counsel for Plaintiff announced that he was voluntarily dismissing the claim of Unfair and Deceptive Trade Practices against Defendant Michael Hartnett.

II.

STATEMENT OF FACTS

{6} Defendants move the Court to dismiss Plaintiff's action pursuant to Rules 12(b)(1), 12(b)(6), and 41(b) of the North Carolina Rules of Civil Procedure. "'When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings.'" *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010) (quoting *DOT v. Blue,* 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001)). "'However, if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff.'" *Id.* (quoting *Blue,* 147 N.C. App. at 603, 556 S.E.2d at

617).  The following facts are taken from Plaintiff's Complaint and are accepted as true for the purpose of resolving Defendants' Motions to Dismiss pursuant to Rule 12(b)(1).  However, the Court does not make findings of fact in connection with Defendants' Motions to Dismiss pursuant to Rule 12(b)(6), as such motions do "not present the merits, but only [determine] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  Accordingly, for purposes of the Court's Rule 12(b)(6) analysis, this Order and Opinon recites only those facts from the Complaint that are relevant to the Court's legal determinations.

{7}     Plaintiff is a corporation organized under the laws of North Carolina, with its principle office and place of business in Robbinsville, Graham County, North Carolina.  (Compl. ¶ 1.)

{8}     The Morris Defendants, Defendant Hartnett, and Defendant Joseph E. Bostic, Jr. are all citizens and residents of North Carolina.  Defendant Jeffery L. Bostic is a resident of Georgia.  (Compl. ¶¶ 6–10.)

{9}     From 2002 until 2005, Plaintiff, a subcontractor, rendered services on construction projects with companies (principally Bostic Construction, Inc. and Bostic Development, LLC ("Defendants' Affiliated Companies")) that were allegedly under Defendants' complete dominion and control.  (Compl. ¶¶ 3, 13.)  Plaintiff became aware of the "facts necessary to assert these causes of action on December 6, 2005."  (Compl. ¶ 11.)

{10}    Throughout the relevant time period alleged by Plaintiff, Defendants all held official positions of responsibility, such as officer, director, or shareholder, within Defendants' Affiliated Companies.  (Compl. ¶¶ 15, 22, 24.)  Plaintiff alleges that Defendants used their positions and control over the Affiliated Companies to create "a relationship wherein the Plaintiff trusted that the Defendants would use the construction loan proceeds for each project to pay for the actual costs of each project . . . ."  (Compl. ¶ 86.)

{11}    Prior to and during Plaintiff's work on various construction projects with Defendants' Affiliated Companies, including the West Commons project,

Defendants used a group of sham companies to "commingle, misuse, and misappropriate the construction loans provided to finance the construction projects on which the Plaintiff performed services." (Compl ¶ 85.)

{12}  Rather than holding loan proceeds to pay off debts for a particular project, Defendants used the proceeds to advance large sums of money to other companies owned by Defendants and make preferential payments for their own benefit. (Compl. ¶¶ 92–93.)

{13}  During the time Plaintiff worked with Defendants' Affiliated Companies, Bostic Construction was operated in a condition that verged on near or actual insolvency and constituted dissolution or winding up of the affairs of the company. (Compl. ¶¶ 94–95.)

{14}  For the purposes of evaluating Defendants' 12(b)(1) Motions, the Court takes judicial notice that on or about January 17, 2005, an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code was filed against Bostic Construction. (Def. Hartnett's Br. Supp. Mot. Dismiss 3.) The Court also takes judicial notice of an order entered in the Bostic Construction bankruptcy proceeding approving the settlement agreement between the Chapter 7 Trustee, the Bostic Defendants, and Melvin Morris related to Bostic Construction's potential claims for (1) preferential payments under the Bankruptcy Code and (2) alleged breaches of the fiduciary duties these Defendants owed to Bostic Construction in their capacities as officers and directors. *In re Bostic Construction, Inc.*, No. B–05–11199C–7G (Bankr. M.D.N.C. 2005); (Def. Hartnett's Br. Supp. Mot. Dismiss Ex. A.)

III.

LEGAL STANDARD

A.

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

{15}  "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002). Standing is a question of subject matter

jurisdiction, which is a prerequisite to the exercise of any authority by the state courts. *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003); *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002).

{16} "'When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings.'" *Munger*, 202 N.C. App. at 410, 689 S.E.2d at 235 (quoting *Blue,* 147 N.C. App. at 603, 556 S.E.2d at 617).

B.

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

{17} The question for the court on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). "[T]he pleadings, when taken as true, [must be] legally sufficient to satisfy the elements of at least some . . . recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing *Harris*, 85 N.C. App. 669, 355 S.E.2d 838).

{18} "'Dismissal of a complaint is proper under the provisions of Rule 12(b)(6) . . . when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.'" *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (quoting *Hooper v. Liberty Mut. Ins. Co.*, 84 N.C. App. 549, 551, 353 S.E.2d 248, 250 (1987)). A motion to dismiss "is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." *Id.* (citing *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996)).

{19} When considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are

not admitted." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

IV.

ANALYSIS

A.

RES JUDICATA AND COLLATERAL ESTOPPEL

{20}   The Morris Defendants argue that Plaintiff is barred from bringing the claims included in the Complaint under the doctrines of res judicata and collateral estoppel.  Plaintiff on the other hand, argues that the Defendants should be estopped from challenging Plaintiff's standing because of this Court's ruling in the Prior Action.  (Pl.'s Br. Resp. Defs.' Mots. Dismiss 4–7; Morris Defs.' Br. Supp. Mt. Dismiss 6.)  The Court will evaluate these arguments before addressing the substantive arguments of Defendants' Motions to Dismiss.

{21}   "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (quoting *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413, 474 S.E.2d 127, 128 (1996)).  For res judicata to apply:

> a party must "show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both [the party asserting *res judicata* and the party against whom *res judicata* is asserted] were either parties or stand in privity with parties."

*State ex rel. Tucker*, 344 N.C. at 413–14, 474 S.E.2d at 128 (alteration in original) (quoting *Thomas M. McInnis & Assoc. v. Hall,* 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)).

{22}   Under the companion doctrine of collateral estoppel or issue preclusion, "the determination of an issue in a prior judicial or administrative proceeding precludes the re-litigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to

litigate that issue in the earlier proceeding." *Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880.  A party attempting to assert collateral estoppel must show:

> that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both [the party asserting collateral estoppel and the party against whom collateral estoppel is asserted] were either parties to the earlier suit or were in privity with parties.

*State ex rel. Tucker*, 344 N.C. at 414, 474 S.E.2d at 128–29 (alteration in original) (citation omitted).

{23}    Determining when parties are in privity can be difficult:

> the meaning of "privity" for purposes of *res judicata* and collateral estoppel is somewhat elusive. *Settle v. Beasley*, 309 N.C. 616, 620, 308 S.E.2d 288, 290 (1983).  Indeed, "there is no definition of the word 'privity' which can be applied in all cases." *Masters v. Dunstan*, 256 N.C. 520, 524, 124 S.E.2d 574, 577 (1962).  The prevailing definition that has emerged from our cases is that "privity" for purposes of *res judicata* and collateral estoppel "denotes a mutual or successive relationship to the same rights of property." *Settle*, 309 N.C. at 620, 308 S.E.2d at 290[.]

*Id.* at 416–17, 474 S.E.2d 127, 130 (quoting *Hales v. N.C. Ins. Guar. Ass'n*, 337 N.C. 329, 333–34, 445 S.E.2d 590, 594 (1994)).

{24}    "'Privity is not established, however, from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same state of facts, or because the question litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action.'" *Id.* at 417, 474 S.E.2d at 130 (quoting 47 Am. Jur. 2d *Judgments* § 633 (1995)).

{25}    Plaintiff argues that because this Court determined that Plaintiff had standing to bring its claims in the Prior Action, *Phillips & Jordan, Inc. v. Bostic*, 2009 NCBC 13 (N.C. Super. Ct. June 2, 2009), http://www.ncbusinesscourt.net/opinions/2009_NCBC_13.pdf, the Defendants should be estopped from raising objections to Plaintiff's standing in their Motions to Dismiss.  (Pl.'s Br. Resp. Defs.' Mot. Dismiss 6.)  The Morris Defendants argue that Plaintiff's claims are barred under res judicata and collateral estoppel because of the bankruptcy order and

settlement agreement approved in *In re Bostic Construction, Inc.*, No. B–05–11199C–7G (Bankr. M.D.N.C. 2005). (Morris Defs.' Mot. Dismiss Ex. A.)

{26} For a party to assert either res judicata or collateral estoppel there must be a final judgment on the merits in the previous action. *See State ex rel. Tucker*, 344 N.C. at 413–14, 474 S.E.2d at 128 (defining the elements of res judicata and collateral estoppel). However, "where an action or proceeding has been [voluntarily] dismissed, rulings preceding the final judgment of dismissal are, as a general proposition, not capable of becoming *res judicata*." *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965) (citation omitted) (stating that "[a] nonsuit 'is but like the blowing out of a candle, which a man at his own pleasure may light again.'" (quoting *Grimes v. Andrews*, 170 N.C. 515, 521, 87 S.E. 341, 343 (1915)); *see also Phipps v. Paley*, 90 N.C. App. 170, 174, 368 S.E.2d 21, 24 (1988) (stating that "whether a previous judgment was on the merits is [equally] relevant to the application of [res judicata or] collateral estoppel.") The prior action cited by Plaintiff as estopping Defendants' challenge to standing was voluntarily dismissed by Plaintiff on November 1, 2010. *Phillips & Jordan, Inc.*, No. 08 CVS 07 (N.C. Super. Ct. filed Nov. 1, 2010). Accordingly, the Court finds that there was no final judgment on the merits and therefore Defendants can not be estopped from challenging Plaintiff's standing in this action.

{27} As to the Morris Defendants' argument, the Court finds that Plaintiff was neither a party, nor in privity with a party involved in the bankruptcy action Defendants argue bars Plaintiff's causes of action. "'[P]rivity' for purposes of *res judicata* and collateral estoppel denotes a mutual or successive relationship to the same rights of property." *State ex rel. Tucker*, 344 N.C. at 416–17, 474 S.E.2d at 130 (citations omitted). "Upon the filing of a bankruptcy petition, general claims held by the debtor's creditors become property of the bankruptcy estate." *TUG Liquidation LLC, v. Atwood (In re BuildNet, Inc.*, 2004 Bankr. LEXIS 2383, at *20 (Bankr. M.D.N.C. June 16, 2004) (unpublished)). While Plaintiff might have been in privity with the bankruptcy trustee if its claims were general claims, and thus subsumed by the bankruptcy trustee upon the filing for bankruptcy, the Court finds

that Plaintiff has adequately alleged that the individual defendants, in their positions as officers and directors of Defendants' Affiliated Companies, engaged in constructive fraud and Plaintiff was individually injured separate and apart from other creditors. As such, Plaintiff's claims were not the property of the bankruptcy estate. Because Plaintiff was neither a party to the prior action, nor in privity with a party, Defendant can not demonstrate that that all of the elements of either res judicata or collateral estoppel are present and thus Plaintiff is not estopped from bringing its claims in this action.

B.

MOTION TO DISMISS RULE 12(b)(1)

{28} The Bostic Defendants, Morris Defendants, and Defendant Hartnett contend that Plaintiff lacks standing to assert a claim for constructive fraud against Defendants in their capacity as officers or directors of Bostic Construction because: (1) the claim (if any) belongs to Bostic Construction; and (2) the claim is barred because it was settled as part of Bostic Construction's Chapter 7 bankruptcy proceeding. The Court disagrees.

{29} "'[W]hen a corporation enters bankruptcy, any legal claims that could be maintained *by the corporation* against other parties become part of the bankruptcy estate, . . . and claims that are part of the bankruptcy estate may only be brought by the trustee in the bankruptcy proceeding.'" *Phillips & Jordan, Inc. v. Bostic*, 2009 NCBC 13 ¶ 71 (N.C. Super. Ct. June 2, 2009), http://www.ncbusiness court.net/opinions/2009_NCBC_13.pdf (quoting *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 25, 560 S.E.2d 817, 822 (2002)). In addition, "[u]pon the filing of a bankruptcy petition, general claims held by the debtor's creditors become property of the bankruptcy estate." *TUG Liquidation LLC, v. Atwood (In re BuildNet, Inc.*, 2004 Bankr. LEXIS 2383, at *20 (Bankr. M.D.N.C. June 16, 2004) (unpublished)).

{30} "Whether plaintiff's claim is property of the bankruptcy estate, and, therefore, under the full authority of the bankruptcy trustee, requires an examination of the nature of the claim under state law." *Keener Lumber Co.*, 149 N.C. App. at 26, 560 S.E.2d at 822.

{31}    The North Carolina Court of Appeals has stated that:

Under North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation*, and where it is alleged that directors have breached this duty, the action is properly maintained *by the corporation* rather than any individual creditor or stockholder. . . . However, where a cause of action is "founded on injuries peculiar or personal to [an individual creditor or stockholder], so that any recovery would not pass to the corporation and indirectly to other creditors," the cause of action belongs to, and is properly maintained by, that particular creditor or stockholder.

*Id.* at 26, 560 S.E.2d at 822 (alteration in original) (quoting *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)).

{32}    "'As a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation.'" *Id.* at 29, 560 S.E.2d at 824 (quoting *Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 526, 455 S.E.2d 896, 899, *disc. review denied*, 340 N.C. 363, 458 S.E.2d 197 (1995)). "However, North Carolina law holds that, under certain circumstances, directors of a corporation do owe a fiduciary duty to creditors of the corporation, and that this duty is breached if the directors take advantage of their position for their own benefit at the expense of other creditors." *Id.* at 30, 560 S.E.2d at 824 (citing *Whitley*, 118 N.C. App. 523, 455 S.E.2d 896).

{33}    "[D]irectors of a corporation owe a fiduciary duty to creditors of the corporation only where there exist 'circumstances amounting to a 'winding-up' or dissolution of the corporation.'" *Id.* at 31, 560 S.E.2d at 825 (quoting *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900).

{34}    A claim brought by a creditor against directors of a corporation, "alleging that the director has committed constructive fraud by breaching his fiduciary duty owed directly to the creditor, is a claim founded on injuries peculiar or personal to the individual creditor, and, therefore, is a claim that belongs to the creditor and not the corporation." *Id.* at 26–27, 560 S.E.2d at 823 (citing *Mills Co. v. Earle*, 233 N.C. 74, 62 S.E.2d 492 (1950)).

{35}    In its Complaint Plaintiff alleges that: Defendants were officers, shareholders, and or directors of Defendants' Affiliated Companies (Compl. ¶93.);

that Defendants made preferential payments out of the construction loan proceeds for Defendants' personal benefit (Compl. ¶ 93.); that Defendants made preferential payments to Defendant, Joseph Bostic, that totaled an estimated three hundred thousand dollars (Compl. ¶ 93.); that Defendants "advanced large sums of the construction loan proceeds to other businesses that the Defendants held ownership [interests in] for the Defendants' personal gain" (Compl. ¶ 92.); and that these transfers allegedly occurred when Defendants' Affiliated Companies were in a condition that verged on near or actual insolvency and constituted dissolution or winding up of the affairs of the company.  (Compl. ¶¶ 94–95.)

{36}    Defendants argue that (1) Plaintiff's claims were resolved in a settlement agreement entered into by the bankruptcy trustee and the individual Defendants and (2) that because Plaintiff's claims are general claims shared by all creditors those claims became the property of the bankruptcy estate pursuant to 11 U.S.C. § 541.[1]  While Defendants are correct that upon the filing of a bankruptcy petition, general claims become the property of the bankruptcy estate, *see* 11 U.S.C. § 541, here the Court finds that Plaintiff's Complaint alleges that Defendants breached a duty that they owed directly to the creditor rather than an injury that is common to all creditors.  Accordingly, Plaintiff's claims did not become the property of the bankruptcy estate and the settlement agreement between the bankruptcy trustee and Defendants, which Plaintiff was not a party to, does not prevent Plaintiff from alleging the claims included in its Complaint.  Thus, the Court holds that Plaintiff has standing to bring the claims in this action and Defendants' Motions to Dismiss pursuant to Rule 12(b)(1) are **DENIED**.

---

[1] The Court notes that Defendants Hartnett and Tyler Morris were not signatories to the referenced Settlement and Release.  (*See* Def. Hartnett's Br. Supp. Mot. Dismiss Ex. A.)

## C.

## MOTION TO DISMISS RULE 12(b)(6)

### 1.

### CONSTRUCTIVE FRAUD

{37}   To sufficiently state a claim for constructive fraud, a plaintiff must show (1) a relationship of trust and confidence akin to that of a fiduciary, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that the plaintiff was injured as a result. *Sterner v. Penn*, 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003); *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997).

{38}   Constructive fraud differs from actual fraud in that "it is based on a confidential relationship rather than a specific misrepresentation." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (1981).

{39}   The pleading requirements for constructive fraud may be met by alleging "facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950).

{40}   Constructive fraud by a director of a corporation generally arises from the director's breach of a fiduciary duty.  As a general rule, however, directors owe fiduciary duties to the corporation, and not to any individual creditor.  *Keener Lumber Co.*, 149 N.C. App. at 29–30, 560 S.E.2d, at 824.

{41}   Thus, in most instances where a director breaches a fiduciary duty, the action is properly maintained by the corporation rather than an individual creditor. *Id.* at 26, 560 S.E.2d at 822 (citing *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)).

{42}   In certain circumstances, however, corporate directors may owe a fiduciary duty to creditors of the corporation.  The circumstances under which a director's fiduciary obligations extend to creditors have been limited to those

situations "'amounting to a 'winding up' or dissolution of the corporation.'" *Id.* at 31, 560 S.E.2d at 825 (quoting *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900).

{43}    Where a director owes a fiduciary duty to a creditor of the corporation, a breach occurs if the director takes advantage of his position for his own benefit at the expense of the creditor. *Id.* at 30, 560 S.E.2d at 824.

{44}    Moreover, "once the fiduciary duty arises, a director must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis." *Id.* at 33, 560 S.E.2d at 827 (citing *Bassett v. Cooperage Co.*, 188 N.C. 511, 512, 125 S.E. 14, 14 (1924)).

{45}    Where a creditor alleges constructive fraud by a director at a time when the corporation "'is in declining circumstances and verging on insolvency,'" *id.* at 30, 560 S.E.2d at 825 (quoting *Wall v. Rothrock*, 171 N.C. 388, 391, 88 S.E. 633, 635 (1916)), or "where such facts establish circumstances that amount 'practically to a dissolution,'" *Keener*, at 30, 560 S.E.2d at 825 (quoting *Bassett*, 188 N.C. at 512, 125 S.E. at 14), the claim is one that "belongs to the creditor and not the corporation." *Id.* at 26, 560 S.E.2d at 823 (citing *Mills Co.*, 233 N.C. at 62 S.E.2d at 492).

{46}    "'[A] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1–56 . . . .'" *Toomer v. Bank Branch & Trust Co.*, 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005) (quoting *Nationsbank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000)).

{47}    Defendant Hartnett argues that Plaintiff's claim for constructive fraud is barred by the applicable statute of limitations. As the Court of Appeals held in *Toomer*, there is a 10-year statute of limitations for a claim of constructive fraud based on a breach of fiduciary duty. *Toomer*, 171 N.C. App. at 67, 614 S.E.2d at 335. This Court finds that Plaintiff's Complaint alleges a claim for constructive fraud based on a breach of fiduciary duty (Compl. ¶ 99); that Plaintiff became aware of the facts giving rise to its claim on December 6, 2005 (Compl. ¶ 11); that Defendants' conduct occurred between 2002 and 2005 (Compl. ¶¶ 3, 82); and that

Plaintiff filed this action on April 1, 2011. (Compl. p. 26.) Accordingly, the Court holds that Plaintiff brought his claim for constructive fraud within the applicable statute of limitations.

{48} Turning to Defendants' argument that Plaintiff failed to sufficiently plead a claim for constructive fraud, the Court finds that Plaintiff has alleged: that Defendants Melvin Morris and Jeffrey Bostic held positions of responsibility, such as officer, director, or shareholder, within Defendants' Affiliated Companies (Compl. ¶¶ 15, 81); that Bostic Construction, Inc. was operated in a condition that verged on near or actual insolvency; that Bostic Construction's condition constituted dissolution or winding up of the affairs of the company (Compl. ¶¶ 94–95); that Defendants Melvin Morris and Jeffery Bostic caused Bostic Construction, Inc. to "ma[k]e preferential payments out of the construction loan proceeds for [Defendants] own personal benefit;" that "the Defendants used their positions with Bostic Construction to make preferential payments to the Defendant, Joseph Bostic, that totaled an estimated three hundred thousand dollars" (Compl. ¶ 93); that Defendants "advanced large sums of the construction loan proceeds to other businesses that the Defendants held ownership [interests in] for the Defendants' personal gain" (Compl. ¶ 92); and that Plaintiff was damaged by Defendants' actions in an amount in excess of ten thousand ($10,000.00) dollars. (Compl. ¶ 107.)

{49} Plaintiff merely alleges that Bostic Construction, Inc. verged on near or actual insolvency and was in a condition that constituted dissolution or winding up the affairs of the company. While the *Whitley* and *Keener* courts set out the various factors to be considered in determining whether there existed circumstances amounting to a winding-up or dissolution of the corporation, for the purposes of this 12(b)(6) analysis, it would be inappropriate to require Plaintiff to allege every factor in its Complaint. For purposes of a 12(b)(6) analysis, Plaintiff need only allege sufficient facts to place Defendant on notice of the claims it asserts.[2] Here, Plaintiff

---

[2] *See also Terry*, 302 N.C. at 85, 273 S.E.2d at 678–79 ("A constructive fraud claim requires even less particularity because it is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise

has alleged a situation which, if true, would create a fiduciary relationship between Plaintiff and Defendants Melvin Morris and Jeffery Bostic. The Court also holds that Plaintiff has sufficiently alleged that Defendants Melvin Morris and Jeffery Bostic took advantage of the relationship to benefit themselves, and that Plaintiff was damaged as a result. Accordingly, the Court holds that Plaintiff's allegations are sufficient under the 12(b)(6) standard to state a claim for constructive fraud. The Court therefore **DENIES** Defendants' Motions to Dismiss as to this claim.

2.

AIDING AND ABETTING CONSTRUCTIVE FRAUD

{50}   The Court begins by examining whether North Carolina recognizes a claim for aiding and abetting constructive fraud, and if so, whether the Complaint sufficiently alleges facts that satisfy the elements of such a claim.

{51}   Plaintiff's claim for aiding and abetting constructive fraud is really a claim for aiding and abetting breach of fiduciary duty. *See Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC 3 ¶ 24 (N.C. Super. Ct. July 13, 2005), http://www.ncbusinesscourt.net /opinions/2005%20NCBC%203.htm (stating that "[t]he claim for aiding and abetting breach of fiduciary duty arises from the alleged constructive fraud.").

{52}   "'It is undisputed that the Supreme Court of North Carolina has never recognized [a cause of action for aiding and abetting breach of fiduciary duty].'" *Tong v. Dunn*, 2012 NCBC 16 ¶ 23 (N.C. Super. Ct. Mar. 19, 2012), http://www. ncbusinesscourt.net/opinions /2012_NCBC_16.pdf (quoting *Laws v. Priority Tr. Servs. of N.C., LLC*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009)) (alteration in original). However, the North Carolina Court of Appeals recognized the claim in *Blow v. Shaughnessy*, 88 N.C. App. 484, 364 S.E.2d 444 (1988). In *Blow*, the Court of Appeals was faced with allegations of securities fraud and used federal precedent

---

allegations and the particularity requirement may be met by alleging facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" (alteration in original)).

to support its recognition of the claim. However, subsequent to the court's holding in *Blow*, the United States Supreme Court eliminated *Blow's* federal underpinnings in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994).

{53} Since the holding in *Central Bank of Denver*, there has been no definitive ruling from our appellate courts on the claim's status and thus "[i]t remains an open question whether North Carolina law recognizes" the claim. *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33 ¶ 68 (N.C. Super. Ct. Oct. 19, 2007), http://www.ncbusinesscourt.net/opinions/101907%20Order%20 Webpage.pdf; *compare Laws*, 610 F. Supp. 2d at 532 (granting Rule 12(b)(6) motion to dismiss claim for aiding and abetting breach of fiduciary duty because "no such cause of action exists in North Carolina."), *with In re Vendsouth, Inc.*, 2003 Bankr. LEXIS 1437, at *49 (Bankr. M.D.N.C. Oct. 9, 2003) (stating "North Carolina law recognizes a cause of action for aiding and abetting breach of fiduciary duty.").

{54} To properly allege a claim for aiding and abetting breach of fiduciary duty Plaintiff must show: "(1) violation of a fiduciary duty by the primary party; (2) knowledge of the violation by the aiding and abetting party; and (3) substantial assistance by the aider and abettor in achieving the primary violation." *Tong*, 2012 NCBC 16 ¶ 25 (citing *Blow*, 88 N.C. App. at 489, 364 S.E.2d at 447).

{55} In addition, "liability for aiding and abetting a breach of fiduciary duty 'applies only to third parties who do not stand in a fiduciary relationship with the alleged victim, but who provide substantial assistance towards accomplishing the alleged breach.'" *Tong*, 2012 NCBC 16 ¶ 30 (quoting *Battleground*, 2007 NCBC 33 ¶ 70); *see also Sompo Japan Ins. Co., v. Deloitte & Touche, LLP*, 2005 NCBC 2 (N.C. Super. Ct. June 10, 2005), http://www.ncbusinesscourt.net/opinions/2005%20NCBC %202.htm (stating that the elements for fraud and aiding and abetting fraud are duplicative).

{56} Here, the Court does not reach the question of whether the claim for aiding and abetting breach of fiduciary duty exists in North Carolina because the Complaint's allegations defeat the claim even if it existed under North Carolina

law.  *Carlisle*, 169 N.C. App. at 681, 614 S.E.2d at 547 (stating that "'[d]ismissal . . . is proper under the provisions of Rule 12(b)(6) . . . when some fact disclosed in the complaint necessarily defeats the plaintiff's claim.'" (citation omitted)).

{57}    Plaintiff's claim for aiding and abetting constructive fraud is brought against Defendants Tyler Morris, Michael Hartnett, and Joseph Bostic.  (Compl. p. 19.)  In support of its claims Plaintiff alleges that "the Defendants, *and each of them*, held some position of responsibility, such as officer, *director*, or shareholder, within this web of businesses," (Compl. ¶ 15 (emphasis added)) that "Joseph Bostic . . . held ownership and *official positions* with Bostic Construction and Bostic Development," (Compl. ¶ 22 (emphasis added)) and that "during some or *all* of the relevant time periods, the Defendants, Michael Hartnett and Tyler Morris, were officers, *directors* and/or shareholders of Bostic Construction and/or Bostic Development."  (Compl. ¶ 24 (emphasis added).)

{58}    More plainly put, Plaintiff alleges that during all relevant times to this action, every Defendant was a director of Bostic Construction, Inc.  Taking the allegations in Plaintiff's Complaint as true, this would mean, under *Keener*, that during a period of insolvency, winding up, or dissolution, each of the Defendants held positions that carried a fiduciary duty to the company's creditors (including Plaintiff).  Because "liability for aiding and abetting a breach of fiduciary duty 'applies only to third parties who *do not* stand in a fiduciary relationship with the alleged victim . . . ,'" *Tong*, 2012 NCBC 16 ¶ 30 (emphasis added), Plaintiff has alleged facts which defeat its claim for aiding and abetting breach of fiduciary duty. Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss as to this claim. The Court leaves the question of whether a claim for aiding and abetting breach of fiduciary duty exists in North Carolina for another day and does not reach Defendant Hartnett's argument that Plaintiff's claim is barred by the applicable statute of limitations.

UNFAIR AND DECEPTIVE TRADE PRACTICES

{59}   To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), section 75–1.1 of the North Carolina General Statutes, the plaintiff must allege "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998)).

{60}   "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 82, 665 S.E.2d 478, 486, (2008) (internal quotations omitted).

{61}   "'[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. GEN. STAT. § 75–1.1(b) (2011).

{62}   When alleging a claim under the UDTPA, "proof of an independent tort generally is sufficient to make out a separate UDTPA claim." *Battleground*, 2007 NCBC 33 ¶ 75 (citing *Sara Lee Corp. v. Carter*, 351 N.C. 27, 31–33, 519 S.E.2d 308, 311–12 (1999) (holding that the breach of a fiduciary duty by an employee also gave rise to a UDTPA claim); *Governor's Club, Inc. v. Governors Club Ltd. P'ship.*, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002) (holding that "[a]llegations sufficient to allege constructive fraud are likewise sufficient to allege unfair and deceptive trade practices."); *Norman W. Drouillard & Print Purchasing Consultants, Inc. v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 171–73, 423 S.E.2d 324, 326–27 (1992) (holding that a violation of the Trade Secrets Protection Act may also be a violation of the UDTPA); *Roane-Barker v. Se. Hosp. Supply Corp.*, 99 N.C. App. 30, 41, 392 S.E.2d 663, 670 (1990) (holding that a claim alleging tortious interference with contract also makes out a UDTPA violation).

{63} "Any civil action brought under [the UDTPA] to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." N.C. GEN. STAT. § 75–16.2 (2011).

{64} Defendants argue that Plaintiff's claim is barred by the applicable statute of limitations and that Plaintiff has also failed to sufficiently plead a claim under the UDTPA. The Court held *supra* that Plaintiff sufficiently alleged a claim for constructive fraud. As the Court of Appeals held in *Governor's Club, Inc.*, if a Plaintiff has properly pled a claim for constructive fraud, Plaintiff has also sufficiently alleged a claim under the UDTPA. The Court, therefore, finds that Plaintiff has sufficiently pled a claim under the UDTPA.

{65} Turning to whether Plaintiff's claim is barred by the applicable statute of limitations, the Court holds that unlike Plaintiff's claim for constructive fraud, claims under the UDTPA must be brought within four (4) years from the time the cause of action accrues. In this case, Plaintiff's claim is based on the same acts alleged in its claim for constructive fraud. Accordingly, the UDTPA would have accrued when Plaintiff became aware of the facts giving rise to its claim for constructive fraud. Plaintiff alleged that it became aware of the facts giving rise to its claims on December 6, 2005. (Compl. ¶ 11.) However, Plaintiff did not bring this action until April 1, 2011, more than 4 years after the cause of action accrued. Because Plaintiff failed to bring its claim within the time allowed by statute, its UDTPA claim must be dismissed. Thus, the Court **GRANTS** Defendants' Motions to Dismiss as to this claim and Plaintiff's claim under the UDTPA is **DISMISSED** with prejudice.

V.

CONCLUSION

{66} For the reasons stated above, the Court **DENIES** Defendants' Motions to Dismiss pursuant to Rule 12(b)(1); **GRANTS** in part and **DENIES** in part Defendants Motions to Dismiss pursuant to Rule 12(b)(6); and holds that neither Plaintiff nor Defendant is barred by the doctrines of res judicata or collateral estoppel. Accordingly, the Court **DISMISSES** with prejudice Plaintiff's claims for

aiding and abetting constructive fraud and unfair and deceptive trade practices as to all Defendants.

{67}    In light of the foregoing rulings, Defendant's Motion for More Definite Statement is **DENIED**.

**SO ORDERED**, this the 1st day of June, 2012.