Gusinsky v. Flanders Corp., 2013 NCBC 46.

STATE OF NORTH CAROLINA

COUNTY OF BEAUFORT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 337

VLADIMIR GUSINSKY, AS TRUSTEE FOR
THE VLADIMIR GUSINSKY LIVING
TRUST, Individually and on Behalf of All
Others Similarly Situated,
                              Plaintiff

            v.

FLANDERS CORPORATION, HARRY L.
SMITH, JR., JOHN OAKLEY, DAVID M.
MOCK, CHARLIE LEE TINGEN, JR.,
WESLEY M. MEASAMER, PHIL HODGES,
JOE GFOELLER and INSIGHT EQUITY
HOLDINGS LLC,
                              Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)


STATE OF NORTH CAROLINA

COUNTY OF BEAUFORT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 463

JAMES W. DUKE, Individually and on
Behalf of all Others Similarly Situated,
                              Plaintiff

            v.

HARRY L. SMITH, JOHN OAKLEY, DAVID
M. MOCK, CHARLIE LEE TINGEN, JR.,
WESLEY M. MEASAMER, PHIL HODGES,
JOACHIM GFOELLER, AIR ACQUISITION
HOLDINGS, LLC, AIR ACQUISITION, INC.,
INSIGHT EQUITY HOLDINGS LLC and
FLANDERS CORPORATION,
                              Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## OPINION AND ORDER ON MOTION TO DISMISS

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendants' Motion to Dismiss the Amended Complaint ("Motion"), pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should GRANTED, for the reasons stated herein.

*Essex Richards, P.A., by Norris A. Adams, II, Esq. and Marc E. Gustafson, Esq. as Co-Lead Liaison Counsel for Plaintiffs.*

*Jackson & McGee, LLP, by Gary W. Jackson, Esq. and Sam McGee, Esq. as Co-Lead Liaison Counsel for Plaintiffs.*

*Robbins Geller Rudman & Dowd LLP, by Stuart A. Davidson, Esq., Cullin A. O'Brien, Esq. and Christopher C. Martins, Esq. as Co-Lead Counsel for Plaintiffs.*

*Levi & Korsinsky, LLP, by Joseph E. Levi, Esq. and W. Scott Holleman, Esq. as Co-Lead Counsel for Plaintiffs.*

*Hunton & Williams LLP, by Douglas W. Kenyon, Esq., Edward J. Fuhr, Esq. and Johnathon E. Schronce, Esq. for Defendants Insight Equity Holdings LLC, Air Acquisition Holdings LLC and Air Acquisition, Inc.*

*McGuireWoods LLP, by Douglas W. Ey, Jr., Esq., Irving M. Brenner, Esq. and Mark E. Anderson, Esq. for the Individual Defendants and Defendant Flanders Corporation.*

Jolly, Judge.

<u>PROCEDURAL HISTORY</u>

[1]     On April 9, 2012, Plaintiff Vladimir Gusinsky, as Trustee for the Vladimir Gusinsky Living Trust ("Gusinsky"), individually and on behalf of all other similarly situated, filed a Class Action Complaint against Defendants Flanders Corporation ("Flanders"), Insight Equity Holdings LLC ("Insight"), Harry L. Smith, Jr., John Oakley, David M. Mock, Charlie Lee Tingen, Jr., Wesley M. Measamer, Phil Hodges, Joe Gfoeller (collectively, "Individual Defendants").  The Gusinsky action was designated as civil action No. 12 CVS 337 by the Clerk of Superior Court of Beaufort County.

[2]     On May 18, 2012, Plaintiff James W. Duke ("Duke"), individually and on behalf of all others similarly situated, filed a Class Action Complaint against the Individual Defendants, Flanders, Insight, Defendants Air Acquisition Holdings, LLC ("Air Acquisition") and Air Acquisition, Inc. ("Merger Sub").  The Duke action was designated as civil action No. 12 CVS 463 by the Clerk of Superior Court of Beaufort County.

[3]     On August 21, 2012, the court entered an Order on Motion for Consolidation and Appointment of Leadership, consolidating the above-captioned cases and granting leave to Plaintiffs to file a consolidated amended complaint.

[4]     On September 9, 2012, Plaintiffs filed their Direct Shareholder Amended Complaint for Breach of Fiduciary Duties ("Amended Complaint") against all Defendants.[1]

[5]     In the Amended Complaint, Plaintiffs allege the following three claims for relief ("Claim(s)"): Count I – Breach of Fiduciary Duties – Failure to Maximize Shareholder Value (Against Individual Defendants) ("Claim One"); Count II – Breach of

---

[1] Plaintiffs' Amended Complaint is alleged as a class action and defines the class to be "all owners of Flanders common stock and their successors in interest, except Defendants and their affiliates."  Am. Compl. ¶ 27.

Fiduciary Duties – Failure to Disclose (Against Individual Defendants) ("Claim Two") and Count III – Aiding and Abetting (Against Insight, Air Acquisition and Merger Sub) ("Claim Three").

[6]     On October 15, 2012, Defendants filed the Motion, seeking dismissal of all Claims, pursuant to Rule 12(b)(6).

[7]     The Motion has been fully briefed and argued and is ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges that:

[8]     Flanders is a North Carolina corporation with its headquarters in Washington, North Carolina.  At times material, Flanders was a publically-traded company.[2]  Among other things, Flanders designs and manufactures air filters that are used in a variety of different industries.[3]

[9]     Insight and Air Acquisitions are affiliate entities.[4]  Merger Sub is a wholly-owned subsidiary of Air Acquisitions.[5]

[10]     At times material, the Individual Defendants served as directors of Flanders.  In addition to being directors, Defendant Harry L. Smith, Jr. ("Smith") has been the Chief Executive Officer of Flanders since 2009 and Defendant John Oakley ("Oakley") has been Chief Financial Officer of Flanders since 2008.[6]

---

[2] Am. Compl. ¶ 1.
[3] *Id.* ¶ 2.
[4] *Id.* ¶ 1.
[5] *Id.* ¶ 3.
[6] *Id.* ¶¶ 12-13.

[11]     On March 16, 2012, Flanders announced that it had entered into an Agreement and Plan of Merger ("Transaction") with Air Acquisition and Merger Sub.[7] As part of the Transaction, Merger Sub would acquire all of the shares of Flanders at a price of $4.40 per share.[8]  Notwithstanding this agreement, the Transaction was contingent on a majority of all outstanding shares of Flanders voting in favor of the Transaction.[9]

[12]     Sometime in early April of 2012, the directors of Flanders distributed a Proxy Statement to the shareholders ("Proxy Statement").  The Proxy Statement provided information regarding the Transaction in order to allow the shareholders to make an informed vote on whether or not to approve the Transaction.[10]

[13]     On May 16, 2012, Flanders announced that a majority of the stockholders had approved the Transaction.[11]  As a consequence of the Transaction, Flanders was delisted as a public company from this date.[12]

[14]     Plaintiffs allege that both the disclosures contained in the Proxy Statement and the price agreed to by the Individual Defendants for each share of Flanders stock were inadequate.[13]  Among other things, the Amended Complaint alleges that the Proxy Statement did not disclose (a) the full extent of Smith and Oakley's self-interest in the Transaction, (b) the data used to support the financial opinion rendered by Flanders' financial adviser, (c) free cash flow analysis for Flanders and (d) information related to

---

[7] *Id.* ¶ 3.
[8] *Id.* ¶ 43.
[9] *Id.* ¶ 44.
[10] *Id.* ¶¶ 64-65.
[11] *Id.* ¶¶ 45-46.
[12] *Id.* ¶ 45.
[13] *Id.* ¶¶ 52-55, 64-77.

other potentially interested buyers.[14] Plaintiffs contend that the omission of this information from the Proxy Statement prevented the shareholders from casting an informed vote with respect to the Transaction.[15]

[15] Plaintiffs further allege that certain aspects of the merger agreement involved breaches of fiduciary duties owed by the Individual Defendants. Specifically, Plaintiffs point to the fact that individuals representing approximately 54% of Flanders' outstanding shares entered into voting agreements to vote their shares in favor of the proposed merger, thus enabling the merger to be ratified even though it was not in the best interest of Flanders' minority shareholders.[16] Plaintiffs also allege that certain portions of the merger agreement amounted to preclusive deal protection devices, notably (a) the no-solicitation provision prohibiting the Company from soliciting other offers, (b) Air Acquisition's right to match any unsolicited superior offer and (c) the termination fee of $3.1 million payable to Air Acquisition if Flanders decided to pursue a competing offer.[17]

## DISCUSSION

[16] The Motion seeks dismissal of the Claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Bringing a motion to dismiss under Rule 12(b)(6) allows the moving party to test the legal sufficiency of a complaint. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[17] The court, in deciding a Rule 12(b)(6) motion, should treat the well-pleaded allegations of the complaint as true and admitted, but conclusions of law or

---

[14] *See, e.g., id.* ¶¶ 65-77.
[15] *Id.* ¶ 77.
[16] *Id.* ¶ 46.
[17] *Id.* ¶¶ 56-63.

unwarranted deductions of fact are not admitted. *Id.* The allegations set forth in the complaint are to be treated in a light most favorable to the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986).

[18] A Rule 12(b)(6) motion should be granted when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to make a good claim or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). Documents that are attached to the complaint as exhibits and referenced therein will be considered by the court for Rule 12(b)(6) purposes. *Woolard v. Davenport*, 166 N.C. App. 129, 133-34 (2004).

[19] Defendants contend that the Motion should be granted as to Claims One and Two because the Individual Defendants owed no fiduciary duty to Plaintiffs.[18] Defendants further contend that any duty that was owed by the Individual Defendants was owed to Flanders, the corporation, making Claims One and Two derivative claims.[19] Further, Defendants contend that Plaintiffs do not have standing to assert Claims One and Two because Plaintiffs did not make a proper demand prior to filing this action.[20] Lastly, Defendants contend that Claim Three fails because it alleges relief on the basis of a claim that is not recognized by existing North Carolina law (i.e., aiding and abetting a breach of fiduciary duty) and for which relief cannot be granted.[21] Defendants also argue that even if this court concludes that Claim Three is a recognized claim for relief under North Carolina law, the Claim should still be dismissed

---

[18] Mem. Law Support Mot. ("Defendants' Memo") 8.
[19] *Id.* 8-10.
[20] *Id.* Defendants raise a host of other arguments in support of their Motion. Notably, Defendants contend that Plaintiffs (a) waited too long to challenge the Transaction, (b) cannot overcome the business judgment rule and (c) have otherwise failed to plead critical elements of their Claims. *See id.* 10-22 (setting out the arguments for dismissal on these grounds).
[21] *Id.* 23-24.

if the court concludes that the Individual Defendants did not breach a fiduciary duty to Plaintiffs.[22]

## Claim One

[20]    Claim One of Plaintiffs' Amended Complaint is fashioned as a claim for breach of fiduciary duties against the Individual Defendants based upon the Individual Defendants' "Failure to Maximize Shareholder Value."  In support of Claim One, Plaintiffs allege that, "[t]he Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence *owed to the public shareholders of Flanders* and have acted to put their personal interests ahead of the interests of Flanders' shareholders."[23]  Plaintiffs further allege that,

> [t]he Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence *owed to the shareholders of Flanders* because, among other reasons: (a) they failed to take steps to maximize the value of Flanders to its public shareholders and took steps to avoid competitive bidding [(principally through the allegedly preclusive deal protection devices discussed *supra*)]; (b) they failed to properly value Flanders; and (c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Transaction.[24]

[21]    Claim One is asserted as a direct claim on behalf of the named Plaintiffs and the putative class of Flanders' shareholders against the Individual Defendants.  It is uncontested that Plaintiffs did not seek to assert Claim One on a derivative basis and made no pre-suit demand upon the corporation with regard to Claim One.  Indeed, Plaintiffs' primary argument against dismissal is that Claim One is not derivative, but is rather a direct claim that arises from distinct fiduciary duties owed directly to the

---

[22] *Id.* 24.
[23] Am. Compl. ¶ 79 (emphasis added).
[24] *Id.* ¶ 81 (emphasis added).

shareholders by the Individual Defendants and which properly is brought on behalf of a subset of shareholders and not on behalf of the Flanders, the corporation.[25]

[22]    It is well-settled under North Carolina law that, "directors of a corporation generally owe a fiduciary duty to the corporation, and where it is alleged that directors have breached this duty, the action is properly maintained by the corporation rather than any individual creditor or shareholder." *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 26 (2002) (emphasis omitted).  While it may be said that directors have a general duty to act for the benefit of all shareholders, the General Assembly, in amending the statutes governing corporations, eliminated the provision that a director's duty runs to both the shareholders and the corporation.  *Estate of Browne v. Thompson*, __ N.C. App. __, 727 S.E.2d 573, 576 (2012) ("The drafters recognized that directors have a duty to act for the benefit of all shareholders of the corporation, but they intended to avoid stating a duty owed directly by the directors to the shareholders that might be construed to give shareholders a direct right of action on claims that should be asserted derivatively." (quoting Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 14.01[2] (7th ed.) (citing Official Commentary, N.C. Gen. Stat. § 55-8-30 (1989))))).  Thus, under North Carolina law a cause of action for a director's breach of their fiduciary duties, under most circumstances, accrues to the corporation and not to the individual shareholder.

[23]    As a general rule, shareholders lack standing to bring individual causes of action to enforce actions accruing to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659 (1997); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395-96 (2000).  This concept loosely has come to be known as the *Barger* rule.  In

---

[25] Mem. Law Opp'n Defs. Mot. Dismiss ("Plaintiffs' Memo") 2-3.

*Barger*, the North Carolina Supreme Court also held that a shareholder may maintain a direct, individual action for an injury that directly affects the shareholder, even if the corporation also has a claim for relief arising from the same wrong, but only if (a) the shareholder can show that he was owed a special duty by the wrongdoer or (b) that the injury suffered by the shareholder is separate and distinct from that sustained by other shareholders or the corporation itself. *Barger*, 346 N.C. at 659.

[24] In most circumstances, causes of action for a director's breach of the duties of good faith, loyalty and independence are the sorts of claims that accrue directly to the corporation, are derivative and do not give rise to a direct cause of action on behalf of an individual shareholder. Despite this fact, Plaintiffs attempt to argue that Claim One is a direct claim for multiple reasons, each of which is discussed in turn below.

[25] Plaintiffs' first argument in support of their contention that Claim One is a direct claim may be dispensed with quickly. In short, Plaintiffs contend that G.S. 55-8-30(a) contemplates fiduciary duties owed directly to shareholders that may give rise to a direct cause of action on behalf of individual shareholders. As support for this contention, Plaintiffs direct the court to G.S. 55-8-30(a), which states:

> (a)  A director shall discharge his duties as a director, including his duties as a member of a committee:
>
> (1)  In good faith;
>
> (2)  With the care an ordinary prudent person in a like position would exercise under similar circumstances; and
>
> (3)  In a manner he reasonably believes to be in the best interests of the corporation.

Plaintiffs point out that only subparagraph (a)(3) specifically defines the director's duty as one owing to the corporation, and that absent from subparagraphs (a)(1) and (a)(2) is language that similarly would limit the defined duty to one being owed only to the corporation. From this, Plaintiffs advance the argument that G.S. 55-8-30(a) contemplates fiduciary duties under (a)(1) and (a)(2) that are owed directly to shareholders and that give rise to direct causes of action on the part of individual shareholders.[26] However, the Official Commentary to G.S. 55-8-30, cited above, plainly contradicts Plaintiffs argument in this regard. Therefore, Plaintiffs' argument that G.S. 55-8-30(a) provides for a direct cause of action by a shareholder must fail.

[26] Plaintiffs next argue that Claim One is appropriately raised as a direct cause of action because North Carolina law recognizes certain special, fiduciary duties owed by the Individual Defendants directly to Flanders' shareholders. Additionally, Plaintiffs advance the theory that Claim One is a direct cause of action in that the recovery sought would be remitted to Plaintiffs and the putative class members, and not Flanders, because it was the shareholders who received inadequate consideration, not the company itself. Although not noted as such in their arguments, the two theories advanced by Plaintiffs in substance reflect the two exceptions established by *Barger*.

[27] The first exception to the *Barger* rule arises where director(s) owed a "special duty" to plaintiffs and/or certain other shareholders. "[T]he existence of a special duty could be established by facts showing that defendants owed a duty to plaintiff that was personal to plaintiffs as shareholders and was separate and distinct from the duty defendants owed the corporation." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 336 (2000) (citing *Barger*, 346 N.C. at 659). A special

---

[26] *Id.* 8-9.

duty may arise from either contract or otherwise. *Barger*, 346 N.C. at 659. North Carolina courts have recognized that a "special duty" under *Barger* may exist where a defendant actually induces a plaintiff to become a shareholder, *Howell v. Fisher*, 49 N.C. App. 488, 497 (1980), or where there is a duty arising from a contract between plaintiff and defendant. *Barger*, 346 N.C. at 659.

[28] Plaintiffs do not argue that Claim One fits within any of the "special duty" exceptions to the *Barger* rule that have previously been articulated by North Carolina courts. Instead, Plaintiffs argue that North Carolina case law recognizes special, fiduciary duties owed by directors to shareholders as a matter of law and that these fiduciary duties give rise to the "special duty" exception of *Barger*.

[29] The cases cited by Plaintiffs for the proposition that the Individual Defendants owed Plaintiffs special, fiduciary duties are factually distinguishable from the instant matter and are not supportive of Plaintiffs' position. In large measure, the cases cited by Plaintiffs stand for the proposition that where there is a controlling or majority shareholder, certain fiduciary duties are owed to the minority shareholder by the majority shareholder. *See Meiselman v. Meiselman*, 58 N.C. App. 758 (1982) (finding existence of fiduciary duties to minority shareholders of a closely-held corporation); *Lazenby v. Godwin*, 40 N.C. App 487 (1979) (finding "special circumstances" under which majority shareholder of closely-held corporation owed fiduciary duties to minority shareholders); *Umstead v. Durham Hosiery Mills, Inc.*, 578 F. Supp. 342, 345 (M.D.N.C. 1984) (finding fiduciary duties owed by majority shareholder to minority shareholders). Furthermore, most of the cases cited by Plaintiffs also involve closely-held corporations.

Neither of these two factors is present in this case. Flanders was neither closely-held nor controlled by a majority shareholder.

[30] The "special duty" exception under *Barger* requires an articulation of some duty owed to a complaining plaintiff that is distinct from the general duties owed by directors to the corporation or to all shareholders collectively. *Dawson v. Atlanta Design Assocs., Inc.*, 144 N.C. App. 716, 719 ("A 'special duty' exists when the alleged wrongdoer owed a duty 'directly to the shareholder [or member] as an individual.'" (citing *Barger*, 346 N.C. at 659)). The Amended Complaint does not allege with specificity what special duties, if any, were owed to Plaintiffs and members of the putative class, individually. The closest the Amended Complaint comes to doing so is describing the general fiduciary duties owed by directors to a corporation and to shareholders generally. The Amended Complaint does not describe any duty owed to Plaintiffs and members of the putative class that are individual to Plaintiffs or otherwise "special." In fact, Claim One describes the alleged breach by the Individual Defendants in terms of the duties owed to all shareholders of Flanders.[27] This would foreclose on its face the Plaintiffs' ability to rely on the "special duty" exception to *Barger*. In any event, the Amended Complaint fails to describe adequately any "special duty" owed to Plaintiffs and members of the putative class that would avoid the application of *Barger*'s general

---

[27] Am. Compl. ¶¶ 79, 81.

prohibition against direct suits by shareholders for causes of action that accrue to the corporation.[28]

[31]     The second exception to the *Barger* rule provides that a shareholder may bring an individual cause of action if the shareholder has suffered a separate and distinct injury from that suffered by other shareholders.  *Barger*, 346 N.C. at 658-59.  As to this exception, Plaintiffs allege that the injuries suffered by them and members of the putative class, primarily in the form of inadequate consideration received for their shares, is separate and distinct from the harm suffered by the corporation and all shareholders collectively.[29]  Based on the court's review of the Transaction documents and other relevant documents referenced in the Amended Complaint, the only shares of Flanders stock that were outstanding were common stock.  Although authorized by Flanders, no shares of preferred stock were outstanding and there was only one class of outstanding stock in Flanders.  Accordingly, any inadequate consideration received by Plaintiffs likewise would have been received by all the other shareholders.

[32]     In addition, the court is persuaded that the harm of inadequate consideration as alleged here is a harm to the corporation itself.  This is so because a claim for inadequate consideration is, functionally, a claim for the diminution of the value of shares held by all Flanders shareholders.  Without more, the "lost value" of all shares

---

[28] Plaintiffs also have argued in favor of the existence of a "special duty" based upon statements published in the Proxy Statement that Plaintiffs contend constitute an admission by the Individual Defendants that the Individual Defendants owed Plaintiffs and other shareholders special, fiduciary duties.  The court is persuaded that the statements made in the Proxy Statement do not constitute an adoption of a higher standard of care or additional duties from those set out in G.S. Chapter 55 and existing case law.  Plaintiffs also argue that a *de facto* fiduciary relationship arose between the Individual Defendants and Plaintiffs at the time Individual Defendants made the decision to pursue a sale of Flanders, subject to shareholder approval.  G.S. 55-8-30(d) provides, however, that "the duties of a director weighing a change in control situation shall not be any different, nor the standard of care any higher, than otherwise provided in this section."

[29] Am. Compl. ¶¶ 27-32 (alleging class claims on behalf of Plaintiffs and all other owners of Flanders' common stock).

of Flanders' stock does not describe an injury peculiar and personal to Plaintiffs. *See, e.g., Barger*, 346 N.C. at 658. In *Barger,* the North Carolina Supreme Court explained that "[a]n injury is peculiar or personal to the shareholder if a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damages suffered by the corporation." *Id.* at 659 (internal citations omitted). In addressing plaintiffs' allegations in that action, the *Barger* court noted, "[t]he only injury plaintiffs as shareholders allege is the diminution or destruction of the value of their shares as the result of the defendants' negligent or fraudulent misrepresentations of [the company's] financial status. This is precisely the injury suffered by the corporation itself." *Id.* Likewise, the Plaintiffs here fail to allege any harm to themselves and members of the putative class that is separate and distinct from the harm suffered by the corporation and all of Flanders' shareholders collectively.

[33]    The court concludes that Plaintiffs have failed to plead sufficiently that they suffered a separate and distinct injury from other shareholders in regard to Claim One. Accordingly, Plaintiffs have failed to meet the requirements of the second *Barger* exception and may not pursue Claim One as a direct claim.

[34]    Based on the foregoing, the court concludes that Claim One is derivative in nature and may not by pursued by Plaintiffs and members of the putative class as a direct cause of action. It is undisputed that Plaintiffs did not make written demand prior to filing this action, as required by G.S. 55-7-42. The North Carolina Court of Appeals has held that failure to satisfy the demand requirement warrants dismissal of the action. *See Allen v. Ferrera* 141 N.C. App. 284, 287 (2000) ("A plaintiff's failure to fulfill the statutory requirements for bringing a shareholder derivative action [is an] . . .

insurmountable bar [to recovery].").  As a result of Plaintiffs' failure to comply with the demand requirements, Plaintiffs do not have standing to pursue Claim One on behalf of the corporation.[30]  Accordingly, as to Claim One the Motion should be GRANTED and Claim One should be DISMISSED.

## Claim Two

[35]    Claim Two of Plaintiffs' Amended Complaint is fashioned as a claim for breach of fiduciary duty against the Individual Defendants based upon the Individual Defendants' "Failure to Disclose."  In support of Claim Two, Plaintiffs argue that, "the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions."[31]

[36]    Plaintiffs complain of an alleged failure on the part of Individual Defendants to disclose certain material information concerning the proposed sale of Flanders.  Specifically, Plaintiffs allege that the Proxy Statement was inadequate as to its (a) disclosures of projections and other financial information for Flanders and Insight, (b) disclosures of financial advisors' analyses, (c) disclosures of potential conflicts of interest and (d) disclosures concerning the sales process.[32]

[37]    Like Claim One, Claim Two is asserted as a direct cause of action on behalf of Plaintiffs and members of the putative class of Flanders shareholders.  No pre-suit demand was made by Plaintiffs upon Flanders in regard to Claim Two.

---

[30] Additionally, Plaintiffs' lack of standing to bring derivative claims on behalf of the corporation is fatal to the court having subject-matter jurisdiction over such claims.  *See Aubin v. Susi*, 149 N.C. App. 320, 324 (2002) ("Standing is a necessary prerequisite to the court's proper exercise of subject matter jurisdiction." (citing *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164 (2001))).
[31] Am. Compl. ¶ 85.
[32] *Id.* ¶¶ 66-77.

[38]   The crux of Claim Two is that the alleged failure of the Individual Defendants to provide adequate and full disclosure of certain information concerning the proposed merger deprived Plaintiffs of the opportunity to cast a meaningful and informed vote on the Transaction.  Other than having deprived Plaintiffs of the ability to cast an informed vote related to the merger, the Amended Complaint does not describe with any particularity what damage resulted to Plaintiffs from the alleged disclosure failures by the Individual Defendants.  Although not stated explicitly in the Amended Complaint, Plaintiffs' theory of damages as to Claim Two appears to be that had adequate disclosures been made, the shareholders would not have approved the Transaction and Flanders would have continued as a going concern or would have received and accepted a more favorable merger offer.

[39]   Defendants seek dismissal of Claim Two on the grounds that (a) Claim Two is derivative in nature and cannot properly be maintained by Plaintiffs and members of the Class as a direct cause of action for damages, (b) Claim Two is barred by G.S. 55-13-40, (c) Plaintiffs cannot overcome North Carolina's Business Judgment Rule and (d) Plaintiffs have failed to state a claim based upon any disclosure violations.[33]

## Duty to Disclose

[40]   The North Carolina Court of Appeals recently held that, "North Carolina directors 'are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.'"  *Ehrenhaus v. Baker*, __ N.C. App. __, 717 S.E.2d 9, 28 (2011) (quoting *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992)).  In determining that such a duty exists under North Carolina law, the North

---

[33] Defendants' Memo, 1-2.

Carolina Court of Appeals adopted the Delaware courts' articulation of a director's fiduciary duty to disclose and also the Delaware courts' standard for "materiality." *Ehrenhaus*, 717 S.E.2d at 29. Under both Delaware and North Carolina law, "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Ehrenhaus*, 717 S.E.2d at 28 (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)). As explained by both the Delaware and North Carolina courts:

> What the [materiality] standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Id.* at 28-29 (quoting *Rosenblatt*, 493 A.2d at 944).

[41] *Ehrenhaus* provides a concise discussion concerning the existence of a director's duty to disclose under North Carolina law and represents a notable marker in the evolution of the fiduciary duties owed by North Carolina corporate directors. What is not explicit in *Ehrenhaus*, however, is whether an alleged breach of the duty to disclose may give rise to a direct cause of action on behalf of a shareholder or whether such a breach instead would give rise only to a derivative cause of action. The nature of a claim for a director's breach of the duty to disclose is pivotal as to Claim Two because, as discussed above, Plaintiffs have asserted Claim Two directly and made no pre-suit demand. Because the North Carolina Court of Appeals has adopted the Delaware

courts' position on a director's duty to disclose, this court, in examining Claim Two, will consider the body of law that has developed in Delaware with regard to such duty.

[42]     As an initial matter, Delaware has developed a two-part test for determining whether a claim is derivative or direct.  According to the Delaware Supreme Court, the nature of a claim as derivative or direct must be assessed solely by reference to a determination of, (a) who suffered the harm complained of — the plaintiff shareholders individually or the corporation; and (b) whether the shareholders individually or the corporation would receive the benefit of any recovery or other remedy.[34]  *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  The Delaware Supreme Court has considered a claim for breach of the duty to disclose under the *Tooley* test and determined that, "where it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct."  *In re J.P. Morgan Chase & Co. S'holder Litig. v. Harrison*, 906 A.2d 766, 772 (Del. 2006).

[43]     Thus, Delaware law appears to recognize, at least in the narrow context of an allegation that a breach of the duty to disclose impaired a stockholder's right to cast an informed vote, that a claim for a breach of the duty to disclose may be pursued as a

---

[34] The distinction articulated in *Tooley* is consistent with the holdings of North Carolina cases such as *Barger* and *Keeler*.

direct cause of action by a shareholder.[35]  However, this court notes that there appears to be no *per se* rule under Delaware law that claims for breach of the duty to disclose are, by their nature, direct claims.  Accordingly, not all violations of the duty to disclose will necessarily give rise to a direct cause of action on behalf of an individual shareholder.

[44]    In their Claim Two, Plaintiffs allege that the Proxy Statement contained inadequate disclosures of material information and that, as a result, Plaintiffs were deprived of their right to cast an informed vote on the proposed acquisition of Flanders. They ground their Claim on the alleged breach by the Individual Defendants of their duty to disclose such information.  As a result, Claim Two may appropriately be considered as a direct cause of action by Plaintiffs and members of the putative class.

[45]    In view of the foregoing analysis, Claim Two should not be dismissed on the threshold grounds that the Individual Defendants lacked standing because the Individual Defendants owed no direct disclosure duties to shareholders or that Plaintiffs failed to make a pre-suit demand.  However, a determination that Claim Two should not be dismissed upon standing issues does not end the court's inquiry.  As noted above,

---

[35] Issues of causation and the specific remedies available to a shareholder bringing a direct cause of action for disclosure violations are more difficult.  However, this court need not address them as part of its considerations in the instant matter.  It does seem clear that claims for disclosure violations in soliciting shareholder action are most appropriately raised prior to the shareholder vote at issue – when a vote may be enjoined or other equitable relief is available.   This is so because monetary damages in a post-merger setting have a potential to be so speculative as to be unrecoverable, as could be argued with regard to the damages sought by Plaintiffs here.  Still, Delaware law has recognized that, "where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award for nominal damages." *J.P. Morgan Chase*, 906 A.2d at 773 (emphasis omitted).  Thus, although the failure to plead or prove specific damages may not be fatal to such a non-disclosure claim, it may require a plaintiff to proceed on a theory of nominal damages.  Delaware law does not recognize a "*per se* rule that would allow damages for all director breaches of the fiduciary duty of disclosure . . . . [d]amages will be available only in circumstances where disclosure violations are concomitant with deprivation to stockholders' economic interest or impairment of their voting rights." *Id.* at 774 (citations omitted).

Defendants also seek dismissal of Claim Two on the grounds that Claim Two fails to state a claim for a breach of the duty to disclose. The court agrees.[36]

[46]    In light of the North Carolina Court of Appeals' adoption of Delaware law on the duty to disclose, the court finds it both helpful and appropriate to consider Delaware law with respect to pleading standards in non-disclosure cases. Notably, the Delaware Supreme Court has concluded that, "it is inherent in disclosure cases that the misstated or omitted facts be identified and that pleading not be merely conclusory." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 140 (Del. 1997). Additionally, "[a] claim based on disclosure violations must provide some basis for a court to infer that the alleged violations were material. For example, a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." *Id.* at 141. *See also Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000) ("To state a disclosure claim, appellants 'must provide some basis for a court to infer that the alleged violation were material . . . . [They] must allege that facts are missing from the [information] statement, identify those facts, state why they meet the materiality standard and how the omission caused injury.'") (citations omitted).

[47]    Based on the pleading standards discussed above and the definition of "materiality" developed by both Delaware and North Carolina courts, the court concludes that in order to state a claim for a director's breach of the duty to disclose, a plaintiff must articulate how and why the inadequate disclosures complained of

---

[36] Because the court bases its decision to dismiss Claim Two on Plaintiffs' failure to state a claim for disclosure violations, the court need not reach Defendants' arguments related to the Business Judgment Rule and G.S. 55-13-40. The court is mindful of the Individual Defendants' argument that that G.S. 55-13-40 could bar Claim Two in so far as Claim Two can be couched as a post-vote attack on the legality of the merger vote itself.

significantly altered the "total mix" of information made available to shareholders. It is insufficient to simply note, without more, certain pieces of information that were omitted from the body of information provided to shareholders. Indeed, "[i]t is always possible to request just one more piece of information . . . ." *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511 (Del. Ch. 2010).

[48] The Amended Complaint identifies numerous pieces of information related to the valuation and proposed sale of Flanders that allegedly were omitted from the Proxy Statement. There is, however, no articulation of how or why these omissions were material or otherwise altered the total mix of information available to shareholders. For purposes of stating a disclosure claim, it is insufficient to simply develop a list of information that was omitted from a proxy statement and attach, in conclusory fashion, the label "material" to each. The court will not assume the materiality of omissions. It is Plaintiffs' burden to explain why the alleged omissions were material.[37]

[49] With regard to the allegedly inadequate disclosures concerning the sales process, Plaintiffs allege that the Proxy Statement failed to describe "why" certain portions of the merger process unfolded as they did. Allegations that not all aspects of a board's decision-making process or developments in merger negotiations were disclosed in a proxy statement, without more, is also insufficient to support a non-disclosure claim. *See, e.g., Cogent*, 7 A.3d at 511-12 ("While directors must give

---

[37] Beyond the failure of the Amended Complaint to explain why the alleged omissions were material, the court also notes that much of the information that Plaintiffs indicate was omitted from the Proxy Statement was, in fact, included. For example, with regard to the allegedly inadequate disclosures as to potential conflicts of interest on the part of some directors, Plaintiffs claim that the Proxy Statement failed to disclose when Insight first indicated its intent to employ some of Flanders' senior management post-merger and the value of Smith's contemplated investment in Insight. Am. Compl. ¶¶ 72, 75. Setting aside that the Amended Complaint does not indicate how or why this information is material, this information in fact was disclosed in the Proxy Statement. Proxy Statement 6, 24-25.

stockholders an accurate, full, and fair characterization of the events leading up to a board's decision to recommend a tender offer, Delaware law does not require a play-by-play description of every consideration or action taken by a Board, especially when such information would tend to confuse stockholders or inundate them with an overload of information.").

[50]    Therefore, the court concludes that Claim Two fails to state a claim upon which relief can be granted for a breach of the duty to disclose on the part of the Individual Defendants.  As to Claim Two, the Motion should be GRANTED and Claim Two should be DISMISSED.

<u>Claim Three</u>

[51]    Defendants Insight, Air Acquisitions and Merger Sub seek dismissal of Claim Three, which is alleged against them upon a theory that they aided and abetted the Individual Defendants' alleged breaches of fiduciary duties as stated in Claims One and Two.

[52]    The parties disagree over whether aiding and abetting a breach of fiduciary duty claim is a valid cause of action in North Carolina.[38]  Without reaching a conclusion here as to the validity of such a cause of action in North Carolina, it appears that the necessary elements of such a claim would require Plaintiffs to allege that there

---

[38] The North Carolina Supreme Court appears never to have addressed whether a claim for aiding and abetting a breach of fiduciary duty is a valid cause of action.  *See Tong v. Dunn*, 2012 NCBC 16, ¶ 23 (N.C. Super. Ct. Mar. 19, 2012).  "The only North Carolina Court of Appeals decision recognizing such a claim . . . involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994)." *Id.*  Further, in *Ehrenhaus*, the North Carolina Court of Appeals chose to leave the validity of a claim for aiding and abetting a breach of fiduciary duty an open question.  Instead of reaching the ultimate question on the existence of such a claim, the court there found it highly unlikely that the plaintiff would be able to show a breach of fiduciary duty by the primary defendant, which defeated any aiding and abetting claim based on the same alleged duty.  In light of the court's prior conclusions in this Opinion and Order, it need not address the viability of such a claim here.

existed (a) a violation of fiduciary duty, (b) knowledge of the duty violation by the alleged aider and abettor and (c) substantial assistance by the aider and abettor in violation. *Tong v. Dunn*, 2012 NCBC 16, ¶ 25 (N.C. Super. Ct. Mar. 19, 2012) (citing *Blow v. Shaughnessy*, 88 N.C. App. 484, 489 (1988)).[39]

[53]    Defendants contend that Claim Three should be dismissed because, even assuming, *arguendo,* that North Carolina were to recognize a cause of action for aiding and abetting a breach of fiduciary duty, such a claim could not survive in the absence of an underlying breach of fiduciary duty.  The court agrees.

[54]    Because the court has dismissed Claims One and Two, Defendants Insight, Air Acquisitions and Merger Sub could not have aided and abetted a breach of such alleged fiduciary duties.  Therefore, the court concludes that Claim Three fails to state a claim upon which relief can be granted.  As to Claim Three, the Motion should be GRANTED and Claim Three should be DISMISSED.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

[55]    Defendants' Motion to Dismiss the Amended Complaint is GRANTED as to all Plaintiffs' Claims, and this civil action is DISMISSED.

[56]    Taxable costs of this matter are charged to Plaintiffs.

---

[39] The court understands that this action currently is on appeal to the North Carolina Court of Appeals, has been argued and is awaiting decision.

This the 25th day of September, 2013.